Ernest BENTLEY, Appellant,

v.

AERO ENERGY, INC.; Vicki G. Newberg, Acting Director of Special Fund; Lloyd R. Edens, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 94–CA–2250–WC.

Court of Appeals of Kentucky.

July 28, 1995.

Miller Kent Carter, Branham & Carter, P.S.C., Pikeville, for appellant.

Joel D. Zakem, Labor Cabinet, Louisville, for appellee Special Fund.

Before HOWERTON, JOHNSTONE and SCHRODER, JJ.

JOHNSTONE, Judge.

The question presented by this petition for review is whether the failure of the administrative law judge (ALJ) to render a decision within the 90–day time frame prescribed in 803 KAR 25:011 § 10(6)(a) renders that decision a nullity, entitling the claimant to a new hearing and decision within the required time limit. The Workers' Compensation Board perceived no due process deprivation in the failure to adhere to the time requirements of the regulation and concluded that a new hearing was not warranted. We agree and affirm.

Claimant Ernest Bentley sought benefits for injuries he allegedly sustained in the course of his employment with appellee, Aero Energy, Inc. After a hearing, the administrative law judge concluded that Bentley was 25 percent occupationally disabled due to a work-related back injury, but assessed no disability for his psychiatric condition and did not consider a diagnosis of nonwork-related rheumatoid arthritis in deciding the merits of the claim. The award was rendered on December 22, 1993, well in excess of 90 days from the May 28, 1993 hearing. Bentley's petition for reconsideration was denied and the board affirmed the decision of the ALJ. In this appeal, Bentley predicates error solely on the failure to decide his case within 90 days.

The pertinent portion of § 10(6)(a) provides that:

The administrative law judge may announce his decision at the conclusion of the hearing and subsequently file his written opinion, serving it on the parties when

filed, or the administrative law judge may defer his decision until he files the written opinion. In either case, *a decision shall be rendered no later than ninety (90) days following the hearing,* and the time for filing a petition for reconsideration shall not begin to run until the date of filing of the written opinion. (Emphasis added).

Claimant Bentley asserts that the failure to adhere to the dictates of this regulation resulted in an inadequate award. It is his position that the passage of time denied the ALJ benefit of having personally observed the claimant at the formal hearing and diminished the ALJ's ability to judge his credibility based upon demeanor, as well as the spoken word. We disagree.

The components of procedural due process in the context of administrative proceedings are well settled and, in this Commonwealth, are outlined by the following language in *Kentucky Alcoholic Beverage Control Board v. Jacobs,* Ky., 269 S.W.2d 189, 192 (1954):

> In order that the requirements of due process of law be satisfied, the litigant must be afforded procedural due process as well as substantive due process. This includes a hearing, the taking and weighing of evidence, if such is offered, a finding of fact based upon consideration of the evidence, the making of an order supported by substantial evidence, and, where the party's constitutional rights are involved, a judicial review of the administrative action. (Citations omitted).

As to what constitutes a "hearing," we refer to the decision of the United States Supreme Court in *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936), which provides the following analysis of the duties imposed upon the decisionmaker:

> For the weight ascribed by the law to the findings—their conclusiveness when made within the sphere of the authority conferred—rests upon the assumption that the officer who makes the findings has addressed himself to the evidence, and upon that evidence has conscientiously reached the conclusions which he deems it to justify. That duty cannot be performed by one who has not considered evidence or argument. It is not an impersonal obli-

gation. It is a duty akin to that of a judge. The one who decides must hear.

> This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them.

*Morgan,* 298 U.S. at 481–482, 56 S.Ct. at 912.

██ It is therefore evident that the requisites of due process focus upon the appraisal and evaluation of evidence supplied the decision-maker, not upon the opportunity to personally observe the claimant.

The principle at work in the *Morgan* opinion has been the subject of numerous opinions in the federal circuits, among them *Guerrero v. State of New Jersey,* 643 F.2d 148 (3rd Cir.1981), which we find instructive as to opportunity to personally assess a claimant's demeanor:

> This court has adhered to the principle that administrative officers charged with a decision need not personally hear testimony but may instead rely on a written record. In *National Labor Relations Board v. Stocker Mfg. Co.,* 185 F.2d 451 (3d Cir. 1950), this court, relying on *Morgan* and *National Labor Relations Board v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938) (in which the Court held that the NLRB could act solely upon transcribed records and oral arguments without the benefit of a report by the trial examiner who heard the testimony), held that:

>> The doctrine of these cases clearly permits the Board to make its findings and predicate its orders upon the written record without hearing the witnesses testify or availing itself of findings and

recommendations prepared by the officer who heard and observed the witnesses testify. Under the Mackay case, due process permits dispensing with the hearing examiner's report altogether. The Morgan opinion says that the officer who actually decides the controversy may do so on the basis of evidence taken by an examiner and thereafter sifted and analyzed by some other subordinate. Due process in administrative proceedings of the type now under consideration does not require that the testimony be evaluated by an officer who heard and observed the witnesses.

185 F.2d at 451.

Other circuits are in accord. *Estate of Varian v. Commissioner of Internal Revenue*, 396 F.2d 753, 755 (9th Cir.), *cert. denied*, 393 U.S. 962, 89 S.Ct. 402, 21 L.Ed.2d 376 (1968) ("The Supreme Court's statement that '[t]he one who decides must hear' ... means simply that the officer who makes the findings must have considered the evidence or argument."); *Utica Mutual Insurance Company v. Vincent*, 375 F.2d 129, 132 (2d Cir.), *cert. denied*, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967) ("Nothing in ... [*Morgan*] ... suggests that the decider must actually hear the witnesses or be furnished a report on their credibility; the thrust is quite the opposite."); *DeRemer v. United States*, 340 F.2d 712, 716 (8th Cir.1965) ("As a matter of general administrative law, it is well settled, at least since the first and fourth '*Morgan*' cases ... that administrative agencies may properly use subordinates in information-gathering and analysis."); *Southern Garment Mfrs. Ass'n v. Fleming*, 122 F.2d 622, 626 (D.C.Cir.1941) ("While 'the one who decides must hear', it must be remembered that 'hear' is used in the artistic sense of requiring certain procedural minima to insure an informed judgment by the one who had the responsibility of making the final decision and order.").

*Guerrero*, 643 F.2d at 149–50 (footnote omitted).

■ We are thus convinced that under a pure procedural due process analysis, the mere passage of a few months, the time period established in the regulation, did not deprive Bentley of a meaningful opportunity to be heard on his claim. Indeed, a decision by an ALJ other than the one who personally received the evidence would not be deemed invalid.

■ The second prong of Bentley's argument centers on the use of the word "shall" in 803 KAR 25:011 § 10(6)(a). He cites KRS 446.010(29) to support his position that use of the word "shall" is mandatory. We are convinced that, even if we construe the regulatory directive as mandatory, violation of its dictates does not entitle Bentley to a new hearing.

Reference to subsection (b) of the regulation makes clear that the penalty for violation of the prescribed time limit was considered by the drafters and fixed as follows:

A persistent or continuous failure to comply with paragraph (a) of this subsection may be considered by the board as cause for removal of the administrative law judge pursuant to KRS 343.230.

Obviously, the purpose of the time limit is to speed resolution of compensation cases for the benefit of all parties, not to give claimants an additional bite at the apple should the ALJ's decision prove unsatisfactory. This view finds support in case law of other jurisdictions which have considered similar questions. In *Coleman v. United Parcel Service*, 155 Vt. 646, 582 A.2d 151 (1990), the Supreme Court of Vermont resolved the issue of failure to decide a worker's compensation case within the statutory time frame with the following rationale:

A statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision. Moreover, compliance with the time limit is never considered essential to the validity of the proceeding, unless such is the expressed or evident intention of the Legislature. In re Mullestein, 148 Vt. 170, 173–74, 531 A.2d 890, 892–93 (1987). Where the Legislature has intended a time limit to be mandatory, it has clearly ex-

pressed that intent. See 24 V.S.A. § 4470(a) (failure to render decision by zoning board of adjustment within 45 days of hearing deemed a decision favorable to appellant); 24 V.S.A. § 4407(2) (failure to act to approve or disapprove conditional uses within 60 days is deemed approval). We hold, therefore, that exceeding the time limit of 21 V.S.A. § 664 does not deprive the commissioner of jurisdiction. Our holding does not, as defendant suggests, render the sixty-day time frame nugatory. The provision expresses legislative policy and may serve to bring about priority of service in light of competing demands.

*Coleman*, 582 A.2d at 151–52. The Supreme Court of New Hampshire reached a similar conclusion in *Appeal of Henry Martino*, 138 N.H. 612, 644 A.2d 546 (1994):

> Turning to the case at hand, we find nothing in the language or legislative history of RSA 281–A:43, I(b) to indicate it was designed to cure liberty interest concerns of claimants; instead, the legislative history suggests that the thirty-day time limit was simply intended to speed the resolution of workers' compensation cases for the benefit of all parties involved. See House Labor, Industrial and Rehabilitative Services Committee Hearing on HB 1409–FN Transcript at 14 (Jan. 4, 1990) (testimony of David Hampson, Chairman, Governor's Task Force on Workers' Compensation). The statute's purpose of speeding dispositions would be frustrated were we to interpret the time limitation as a jurisdictional requirement. Under that interpretation, we would have to vacate the board's decision and remand for a new hearing—hardly a hastening of final resolution.

*Appeal of Henry Martino*, 644 A.2d at 546.

Given the fact that the drafters of the regulation fashioned a remedy for violation of its mandate and the fact that Bentley suffered no due process deprivation by the ALJ's failure to render his decision within the prescribed time frame, we find absolutely no basis upon which we may disturb the opinion of the board. Accordingly, it is in all respects affirmed.

All concur.