RENDERED:  SEPTEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1466-MR

IMELDA CURTIN                                                          APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 20-CI-00116

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY SERVICES AND
ERIC FRIEDLANDER, SECRETARY OF THE
CABINET FOR HEALTH AND FAMILY SERVICES                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Imelda Curtin appeals from an order of the Franklin

Circuit Court which affirmed a final order from the Secretary of the Cabinet for

Health and Family Services.  The order from the Cabinet substantiated an

allegation that Appellant placed her foster child, M.M. (hereinafter referred to as Child),[1] at risk of emotional abuse. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

Child was placed in the care of Appellant and her husband on August 26, 2016. About one year later, the Cabinet received a report that Child was being abused by Appellant. Specifically, the allegation was that Appellant was calling Child names and making other statements that could be considered emotionally abusive. The Cabinet investigated the allegation and eventually substantiated it, finding that Appellant was neglecting Child by putting her at risk of emotional abuse.[2] Appellant then initiated an administrative appeal. A hearing was held over two days on March 1, 2018, and March 15, 2018. About 511 days after the hearing, the administrative law judge (ALJ) issued a recommended order. The order upheld the original substantiation of neglect due to risk of emotional abuse and requested that the Secretary of the Cabinet, who had final say in the matter, adopt the recommended order. Appellant then timely filed exceptions to the recommended order. About 117 days after the recommended order was filed with the Secretary of the Cabinet, the Secretary adopted the ALJ's recommended order.

---

[1] This case concerns the allegations of abuse against a minor child; therefore, we will not identify the child by her name. Although the child has now reached the age of majority, we will still not use her full name.

[2] Kentucky Revised Statute (KRS) 600.020(1)(a)2. indicates that a child can be deemed abused or neglected if there is a risk of physical or emotional injury.

Upon entry of the Cabinet's final order, Appellant filed a petition for review with the Franklin Circuit Court. Appellant argued that there was insufficient evidence to substantiate the charge of risk of emotional abuse. Appellant also argued that the ALJ and Secretary violated two statutes regarding timeframes for issuing recommended orders and final orders. The circuit court held that there was substantial evidence to support the Cabinet's conclusion that Appellant neglected Child by putting her at risk of emotional abuse. The court also held that the ALJ and Secretary did violate two statutes regarding the timeframe for entering a recommended order and final order, but concluded that such error was harmless. This appeal followed.

## ANALYSIS

On appeal, Appellant argues that there was not substantial evidence to show she abused Child and that the ALJ and Secretary violated two statutes. We will first address the statute issue.

A court which reviews a final decision of an administrative agency may reverse if the agency's decision is in violation of a statute. KRS 13B.150(2)(a); *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Here, the two statutes which the Cabinet violated are KRS 13B.110(1) and KRS 13B.120(4). KRS 13B.110(1) states that an ALJ "shall" submit to the agency head a recommended order "no later than sixty (60) days after receiving a copy of

the official record of the proceeding[.]" KRS 13B.120(4) states an agency head "shall" render a final order within 90 days after the ALJ submits a recommended order. In this case, a final order should have been issued, at most, about 150 days after the final day of the administrative hearing. Instead, a final order was issued 628 days after the hearing. That is an extra 478 days.

The circuit court held that while the Cabinet violated KRS 13B.110(1) and KRS 13B.120(4), it was harmless error because Appellant ultimately received her administrative and judicial appeals, albeit belatedly, and the circuit court found that there was substantial evidence to support the Cabinet's decision. We agree that this was harmless error.

> Kentucky Rules of Civil Procedure (CR) 61.01 states:
>
> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

KRS 446.010(39) states that when examining terms found in statutes, "shall" means "mandatory"; however, this is not always the case. "[T]he use of the word 'shall' with reference to some requirements . . . is usually indicative that it is

mandatory, but it will not be so regarded if the legislative intention appears otherwise." *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884, 886 (1936).

> In order to determine whether strict compliance or substantial compliance is sufficient to satisfy a statutory provision, it first must be determined whether the applicable provision is mandatory or directory. This determination is vital because "[a] proceeding not following a mandatory provision of a statute is rendered illegal and void, while an omission to observe or failure to conform to a directory provision is not." In considering whether the provision is mandatory or directory, we depend "not on form, but on the legislative intent, which is to be ascertained by interpretation from consideration of the entire act, its nature and object, and the consequence of construction one way or the other." In other words, "if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely."

*Knox County v. Hammons*, 129 S.W.3d 839, 842-43 (Ky. 2004) (citations omitted). If a statutory provision is directory, "substantial compliance may satisfy its provisions." *Id*. at 843. Substantial compliance occurs when the purpose of a statute is accomplished and no harm results. *Webster County v. Vaughn*, 365 S.W.2d 109, 111 (Ky. 1962).

Case law from this Court indicates that timeframes, such as the ones described above, are directory and not mandatory. In *Coleman v. Eastern Coal Corp.*, 913 S.W.2d 800, 802 (Ky. App. 1995), *Bentley v. Aero Energy, Inc.*, 903 S.W.2d 912, 914 (Ky. App. 1995), *Hutchins v. Summa Technology/Ken-Mar*, No.

2005-CA-000127-WC, 2005 WL 1993439, at *2 (Ky. App. Aug. 19, 2005), *aff'd,* No. 2005-SC-0734-WC, 2006 WL 1652575 (Ky. Jun. 15, 2006), and *Morgan v. Kentucky Board of Medical Licensure*, No. 2004-CA-001609-MR, 2005 WL 1792198, at *3 (Ky. App. Jul. 29, 2005), this Court held that administrative agencies that miss statutory deadlines for issuing orders or decisions do not violate a litigant's procedural due process rights and substantially comply with the directory timeframes. We conclude the same applies to this case.

Procedural due process "includes a hearing, the taking and weighing of evidence, if such is offered, a finding of fact based upon consideration of the evidence, the making of an order supported by substantial evidence, and, where the party's constitutional rights are involved, a judicial review of the administrative action." *Kentucky Alcoholic Beverage Control Bd. v. Jacobs*, 269 S.W.2d 189, 192 (Ky. 1954). Here, Appellant was afforded due process. She availed herself of administrative and judicial review of the Cabinet's decision, she was allowed to present evidence at a hearing, and a decision was entered against her based on substantial evidence. We find no error in the circuit court's holding that the failure to adhere to the statutory timeframe was harmless error.[3]

---

[3] We are compelled to state that the delay in issuing the recommended order was unreasonably long. We would urge hearing officers and administrative law judges to follow the statutory deadlines as close as possible. We would also recommend that litigants before administrative bodies make a motion or file a writ of mandamus seeking the issuance of delayed orders.

We will now discuss Appellant's argument that the circuit court erred in finding that the evidence relied upon by Secretary Friedlander was substantial evidence of a risk of emotional abuse. This Court's standard of review for an administrative adjudicatory decision is the clearly erroneous standard. *Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986). A decision is clearly erroneous if it is not supported by substantial evidence. *Id.*

> Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that has sufficient probative value to induce conviction in the minds of reasonable people. If there is substantial evidence to support the agency's findings, a court must defer to that finding even though there is evidence to the contrary. A court may not substitute its opinion as to the credibility of the witnesses, the weight given the evidence, or the inferences to be drawn from the evidence. A court's function in administrative matters is one of review, not reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Com'n*, 85 S.W.3d 621, 624 (Ky. App. 2002) (footnotes and citations omitted). "[A] reviewing court, whether it be one of the circuit courts, the Court of Appeals, or [the Kentucky Supreme Court], should refrain from reversing or overturning an administrative agency's decision simply because it does not agree with the agency's wisdom." *Kentucky Unemployment Ins. Com'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 582 (Ky. 2002) (citation omitted).

Secretary Friedlander adopted the ALJ's recommended order in full. The order concluded that Appellant called Child hurtful names, had unrealistic expectations, and described Child in a derogatory manner. The order also held that Child was at a risk of depression, self-harm, poor academic functioning, and social withdrawal. The ALJ and Secretary believed that Appellant's hurtful comments to Child were emotional abuse and that Child's continued exposure to Appellant would result in an increased risk of emotional injury. The order concluded that the Cabinet met its burden in proving Child was at risk for sustaining an emotional injury due to Appellant's hurtful name calling, both to her face and behind her back.

This Court has reviewed the arguments presented, relevant case law, and the entire record, including testimony from the two-day hearing. Based on the review of the evidence, we find that the conclusions of the Secretary are based upon substantial evidence. Tami Stone, a case manager with the Behavioral Health Program with Necco[4] in Florence, Kentucky, testified that she witnessed Appellant state to Child that Child was lazy and ungrateful. Ms. Stone also testified that Appellant would generally say hurtful things to Child during Ms. Stone's home visits; however, the record is not clear if these other general comments were said privately to Ms. Stone or to Child in Ms. Stone's presence.

_____

[4] Necco provides foster care, adoption, and counseling services to children and families.

Tracy Bischoff, the Cabinet's child permanency case worker assigned to Child's case, testified that she witnessed Appellant state to Child that Child was lazy and fat. She also testified that Appellant stated that Child was "the most annoying person she ever met"; however, it is not clear from the record whether this was said in private to Ms. Bischoff or said to Child in front of Ms. Bischoff. In addition, Ms. Bischoff testified that when Appellant would say hurtful things to Child, Child would become quiet and sad.

Dr. James Rosenthal testified that he examined Child on two occasions for one hour each. He testified that Child was guarded and did not want to discuss her past or relationship with the Appellant and Appellant's husband. As part of his assessment of Child, Dr. Rosenthal also spoke to multiple other people: Ms. Bischoff; Ms. Pat Moore, one of Child's therapists; Rob Rosnake, another of Child's therapists; and Appellant. Dr. Rosenthal also examined records from Necco, Holly Hill,[5] the Cabinet, and other therapy and foster care providers who have interacted with Child over the years. Ultimately, Dr. Rosenthal concluded that Appellant's statements and behavior toward Child were emotionally abusive and put Child at and increased risk of mental and emotional problems.

Based on the testimony of Dr. Rosenthal, Ms. Bischoff, and Ms. Stone, we hold that the circuit court did not err by finding the administrative order

---

[5] Holly Hill provides therapy services to children.

was based on substantial evidence. We too believe the order is based on substantial evidence. While there was some evidence presented that Child wanted to stay in Appellant's home and evidence that could put the relationship between Appellant in Child in a positive light, the Secretary, as fact finder, can choose which evidence to believe and which to discount. It is also up to the Secretary to weigh the evidence and determine what evidence is more credible. Our standard of review does not allow us to question those decisions unless they are made without substantial evidence. Such is not the case here; therefore, we affirm.

Appellant's next argument on appeal states that the evidence relied upon in the recommended order was all hearsay and inadmissible. We disagree. KRS 13B.090(1) states:

> In an administrative hearing, findings of fact shall be based exclusively on the evidence on the record. The hearing officer shall exclude evidence that is irrelevant, immaterial, unduly repetitious, or excludable on constitutional or statutory grounds or on the basis of evidentiary privilege recognized in the courts of this Commonwealth. Hearsay evidence may be admissible, if it is the type of evidence that reasonable and prudent persons would rely on in their daily affairs, but it shall not be sufficient in itself to support an agency's findings of facts unless it would be admissible over objections in civil actions.

It is true that hearsay evidence was introduced during the hearing; however, it was not the only evidence relied upon by the ALJ. The ALJ's findings were based on the medical findings of Dr. Rosenthal and the testimony of Ms.

-10-

Bischoff and Ms. Stone. Ms. Bischoff and Ms. Stone both testified at the hearing regarding statements made by Appellant to Child that they believed were inappropriate and harmful. These statements were all witnessed by Ms. Bischoff and Ms. Stone. In addition, while some of Dr. Rosenthal's testimony was based on hearsay, it was corroborated by documentary evidence and testimony in the record. Dr. Rosenthal indicated that he spoke with Child, Ms. Bischoff, Ms. Moore, Mr. Rosnake, and Appellant. He also reviewed the therapy records of Ms. Moore and Mr. Rosnake. Mr. Rosnake did not testify at the hearing and his records were not introduced into evidence. Ms. Moore also did not testify at the hearing, but her records were introduced into evidence.

We believe it was reasonable for Dr. Rosenthal to rely on the statements and records of Mr. Rosnake and Ms. Moore even though they did not testify at the hearing. Furthermore, because some of the evidence relied upon by Dr. Rosenthal was introduced at the hearing, and that evidence supported Dr. Rosenthal's assessment, we conclude that the ALJ did not rely solely on inadmissible hearsay evidence. In addition, during the hearing the ALJ stated that she usually allows all hearsay evidence into the record, but does not use it as the sole basis of her findings. In other words, the ALJ specifically recognized the hearsay limitations set forth in KRS 13B.090(1). We find no error regarding this hearsay issue.

Appellant's final argument on appeal is that Dr. Rosenthal did not adequately explain how he formed his opinions or the methodology he used in evaluating Child's case. Again, we find no error.

> The admissibility of expert testimony is governed by Kentucky Rules of Evidence (KRE) 702. That rule provides:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>>
>>> (1) The testimony is based upon sufficient facts or data;
>>>
>>> (2) The testimony is the product of reliable principles and methods; and
>>>
>>> (3) The witness has applied the principles and methods reliably to the facts of the case.
>
> KRE 702 was written in light of guidance set forth by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *Daubert* requires the trial court to play the role of gatekeeper to prevent the admission of unreliable pseudoscientific evidence. [A] trial court's task in assessing proffered expert testimony is to determine whether the testimony both rests on a reliable foundation and is relevant to the task at hand. . . .
>
> . . .
>
> In making its reliability determination, the trial court must consider whether the reasoning or methodology

underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. To evaluate whether the proffered expert testimony is reliable, a trial court may consider a number of non-exclusive factors such as: whether the principle, theory, or method in question can be (and has been) tested, whether it has been subjected to peer review and publication, whether it has a known or potential rate of error, and whether it enjoys acceptance within a relevant scientific community.

The decisions of trial courts as to the admissibility of expert witness testimony under *Daubert* are generally entitled to deference on appeal because trial courts are in the best position to evaluate firsthand the proposed evidence. Accordingly, whether a witness qualifies as an expert is reviewed under an abuse of discretion standard. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

*Holbrook v. Commonwealth*, 525 S.W.3d 73, 78-79 (Ky. 2017) (internal quotation marks and citations omitted).

In the case at hand, Appellant made no KRE 702 objections regarding Dr. Rosenthal's opinion before or during the hearing. In addition, Appellant did not request a *Daubert* hearing to determine the reliability of Dr. Rosenthal's testimony. In fact, Appellant stipulated to the fact that Dr. Rosenthal was a qualified mental health expert. Finally, Appellant had the opportunity to question Dr. Rosenthal about his methodology or retain her own expert. Appellant did neither.

We also believe Dr. Rosenthal did adequately explain his methodology. He testified that he had two sessions with Child, spoke to other witnesses and mental health treatment providers, and reviewed therapy treatment records. Dr. Rosenthal also testified that reviewing these collateral sources is common and part of his usual practice when conducting mental health assessments. Dr. Rosenthal also testified that his conclusions were based on a reasonable degree of psychological certainty. The ALJ did not abuse its discretion in allowing Dr. Rosenthal's expert testimony.

## CONCLUSION

Based on the foregoing, we conclude that the circuit court did not err in affirming the decision of the Secretary or the rulings made by the ALJ; therefore, we affirm.


ALL CONCUR.


BRIEFS FOR APPELLANT:

W. Steven Middleton
Frankfort, Kentucky

BRIEF FOR APPELLEES:

Kaitlin A. Dierking
Covington, Kentucky